UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
CHRISTOPHER G. PITT, SR., et al.,   )
                                    )
            Plaintiffs,             )
                                    )
      v.                            )   Civil Action No. 01-2225 (PLF)
                                    )
DISTRICT OF COLUMBIA, et al.,       )
                                    )
            Defendants.             )
_____ )

OPINION

           This matter is before the Court on defendants' motion for judgment [40], filed on August 18, 2003, and their second motion for judgment [48], filed on September 4, 2003.  After supplemental briefing, the Court heard oral argument on these motions on September 15, 2005.  On September 27, 2005, the Court issued an order granting both motions in part and denying both in part.  It indicated that an opinion would follow in due course.  This opinion explains why the Court grants the defendants' motion on Count I and denies it in all other respects.

I.  BACKGROUND

           This case arises from the arrest and subsequent criminal prosecution of the plaintiff, Christopher Pitt, for the robbery of an older couple, Henry and Gloria Feldman, which occurred at or very close to 12:00 noon on January 2, 2001, inside the Feldmans' apartment building at 3003 Van Ness Street, N.W.  Mrs. Feldman called 911 and gave a description of the robbery suspect.  Some time after the robbery, two of the defendants, Metropolitan Police Department Officers Bryan C. Adams and Steven Baxter, saw Mr. Pitt enter his car a few blocks

away from the Feldmans' building.  Officers Adams and Baxter followed Mr. Pitt and then stopped his car at the Taft Memorial Bridge on Connecticut Ave., N.W. near Calvert Street. They held him there for the Feldmans and employees of the apartment building to view him and either identify him or rule him out as the robber.  Mrs. Feldman told the police that Mr. Pitt was not the robber.  She testified at trial that she told the police:  "No.  That's not the man that attacked us."  She testified that she got "a good look" and "knew immediately it was not him. . . . I was sure."  Mr. Feldman said that he was uncertain whether Mr. Pitt was the robber; he was "about 50-50, . . . but I don't think so."  Mr. Pitt was arrested and held in custody at the D.C. Jail and then at a halfway house until January 13, 2001.  On January 19, 2001, the criminal charges against him were dismissed.

Mr. Pitt claims that the police lacked grounds to arrest him and that they misrepresented and omitted critical facts when they initiated prosecution against him.  For example, Mr. Pitt claims that the police improperly omitted from their reports the fact that Mrs. Feldman stated that he was not the robber.  A security videotape at the Feldmans' apartment building showed the robber following the Feldmans into their building.  The plaintiffs claim that it obviously is not Mr. Pitt's image in the videotape and that the police were not truthful when they said that they  "determined that the subject stopped and arrested on the Taft Bridge was the same individual observed in the videotape."  The Court and the jury viewed the videotape.  The person on the tape bore little resemblance to Mr. Pitt.  The plaintiffs also claim that before arresting him (and certainly before charging him) the police should have confirmed the fact that Mr. Pitt was at the Qatar Embassy, making a delivery or picking up a package at the time of the robbery.

Mr. Pitt and his wife, Tela Hansom-Pitt, made claims for violation of Mr. Pitt's civil rights, false arrest, malicious prosecution, intentional infliction of emotional distress, and related claims against Officer Adams, Officer Baxter, Detective James T. Bovino, and the District of Columbia. The defendants denied any liability to Mr. Pitt or his wife. The officers denied that they falsely arrested Mr. Pitt or that they acted maliciously or recklessly with the intent to violate plaintiffs' civil rights. They maintain that they had probable cause to arrest and acted reasonably and in good faith at all times under the circumstances. They also maintain that they had a good faith belief that their actions in arresting and charging Mr. Pitt were lawful.

The case was tried to a jury for eight days beginning on August 24, 2003. The jury returned a verdict finding liability against all three of the individual defendants on Count I (violation of civil rights under 42 U.S.C. § 1983) and against the individual defendants and the District of Columbia on Count III (malicious prosecution) and Count VII (loss of consortium). As to Count IV (intentional infliction of emotional distress), it found no liability against any of the three individual defendants, but it did find for each of the plaintiffs separately as against the District of Columbia on that claim. The jury found no liability with respect to Count II (the common law false arrest claim) against any of the defendants. The jury awarded $100,000 in compensatory damages to plaintiff Christopher Pitt and $50,000 in compensatory damages to plaintiff Tela Hansom-Pitt. As punitive damages are not available against the District of Columbia, the jury verdict form only asked the jury to consider punitive damages against the three individual police officer defendants. The jury assessed $1,000 in punitive damages against

each of the individual defendants. On August 26, 2001, the Clerk of Court entered judgment on the verdict for plaintiffs in the amounts just stated, or a total amount of $153,000 in damages, together with costs.

## II.  DISCUSSION

### *A.  Rule 50(b) Standard*

On this motion for judgment as a matter of law after trial under Rule 50(b) of the Federal Rules of Civil Procedure, the Court may grant the motion only if it determines that "there is no legally sufficient evidentiary basis for a reasonable jury to find for" Mr. and Mrs. Pitt on a particular issue. FED. R. CIV. P. 50(a)(1). Judgment as a matter of law is proper if, "considering the evidence in the light most favorable to the [Pitts] and making all reasonable inferences in their favor," the Court concludes that there is no legally sufficient evidentiary basis for a reasonable jury to have found in their favor under controlling law. Hendry v. Pelland, 73 F.3d 397, 400 (D.C. Cir. 1996); see Fox v. District of Columbia, 990 F. Supp. 13, 19 (D.D.C. 1997). The jury's verdict must stand "unless the evidence, together with all inferences that can be reasonably drawn therefrom is so one-sided [in favor of the moving party] that reasonable persons could not disagree on the verdict," Milone v. Washington Metropolitan Area Transit Authority, 91 F.3d 229, 231 (D.C. Cir. 1996), that is, unless the non-movant's evidence is so insufficient that a reasonable finder of fact "could not possibly find for the non-movant." 9 MOORE'S FEDERAL PRACTICE § 50.60[1] at 50-87 (3d ed. 2002).

In deciding a motion for judgment as a matter of law, the Court is not to resolve legitimately disputed issues of fact already decided by the jury. 9 MOORE'S FEDERAL PRACTICE

§ 50.60[1] at 50-87 (3d ed. 2002).  Even if the Court finds the evidence that led to the jury verdict unpersuasive, or that it would have reached a different result if it were sitting as the fact-finder, that is not a basis for overturning the jury's verdict and granting judgment as a matter of law.  Id.  The Court may not grant the motion unless "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached."  Me, Inc. v. Taylor, 157 F.3d 139, 142 (2d Cir. 1998).

### B.  The Specific Claims

The verdict form for Count II -- common law false arrest -- first asked the question, separately for each defendant:  "Do you find by a preponderance of the evidence that [the particular defendant] arrested the plaintiff Christopher G. Pitt, Sr., and that the arrest was without probable cause?"  With respect to each of the four defendants, the jury unanimously answered "Yes."  The jury was then asked:  "If you answered 'Yes' to the previous question, do you find by a preponderance of the evidence that [the defendant] nonetheless, reasonably and in good faith, believed that his conduct toward Mr. Pitt was lawful?"  With respect to each defendant, the jury answered "Yes."  Thus, the jury verdict was for all the defendants on the common law false arrest claim.

With respect to Count I, violation of civil rights under 42 U.S.C. § 1983, the defendants chose not to file a pretrial motion raising the issue of qualified immunity and also -- because, in their view, it is a purely legal question -- chose not to present the question of qualified immunity to the jury.  Thus, on this count, the jury was asked a single question with

respect to each of the individual defendants: "Do you find by a preponderance of the evidence that [the defendant] intentionally committed acts that violated the constitutional right of plaintiff Christopher G. Pitt, Sr., not to be arrested without probable cause?" With respect to each defendant, the jury answered "Yes."

Defendants raise two questions on this motion. The first is whether on the evidence presented at trial there was probable cause to arrest the plaintiff. As already noted, the Court is not free to decide that question based on its own assessment of the evidence and the witnesses' credibility. Rather, under the standards of Rule 50, the Court must ask whether, considering the evidence in the light most favorable to the plaintiffs and making all reasonable inferences in their favor, no reasonable juror could have concluded that there was not probable cause to arrest plaintiff Christopher Pitt. Clearly, defendants fail to meet this test. There was substantial evidence at trial from which a reasonable jury could easily conclude that plaintiff was arrested without probable cause. The Court therefore must reject the defendants' first argument for granting them judgment as a matter of law on Count I.

The second question under Count I is whether even if there was no probable cause to arrest Mr. Pitt the defendants are entitled to qualified immunity. The defendants argue: "Even assuming that the officers lacked probable cause in the constitutional sense, the defendant officers are entitled to qualified immunity because 'a reasonable officer could have believed that probable cause existed to arrest' the plaintiff." Supplemental Memorandum of Points and Authorities in Support of Defendants' Renewed Motion for Judgment as a Matter of Law at 5 (quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991)). Plaintiffs respond that defendants have waived their right to raise qualified immunity as a defense by neither filing a motion pretrial nor

requesting a jury instruction with respect to that defense. They also maintain that the standard for a qualified immunity defense under 42 U.S.C. § 1983 and the test for a reasonable, good faith belief as to the lawfulness of the police conduct as a defense to a common law false arrest claim are two very different standards. They therefore argue that, notwithstanding the jury's verdict on Count II, this Court may and should find as a matter of law that the individual police officers are not entitled to qualified immunity on Count I.

The Court does not agree with plaintiffs either that the defendants have waived the right to raise the defense of qualified immunity on their post-trial motion or that, in the end, the differing formulations of the standards for reasonable good faith belief at common law and for qualified immunity make a difference. In considering Count II, the jury expressly found that the defendants were not liable for common law false arrest because it found by a preponderance of the evidence that the officers (even though they did not have probable cause) had a reasonable, good faith "belie[f] that [their] conduct toward Mr. Pitt, was lawful." This Court is hard-pressed to conclude that the jury would have assessed the very same evidence on which it based its finding on Count II in such a completely different way in considering Count I that it would have reached a different decision. While the formulations concededly are somewhat different, the Court concludes that the jury necessarily would have accepted the defendants' qualified immunity defense if it had been presented to the jury for the same reason it accepted the reasonable good faith belief defense to the common law claim.

Plaintiffs correctly note that subjective good faith was the issue before the jury in considering the common law defense, while qualified immunity depends on a standard of objective reasonableness. Yet this Court logically is guided in its Rule 50(b) qualified immunity

analysis by the jury's determination that the arrest had a reasonable basis under the common law. Based on the testimony at trial and the finding of the jury on the false arrest claim, it is fair to infer that the jury already has found (at least implicitly) or -- certainly, if presented with the qualified immunity question based on the same evidence it considered with respect to Count II -- that it would have found that it was objectively reasonable for the defendants (or for the hypothetical objectively reasonable and competent police officer) to believe that their conduct was lawful.  See Bonide Products, Inc. v. Cahill, 223 F.3d 141, 145 (2d Cir. 2000); Wadkins v. Arnold, 214 F.3d 535, 539 (D.C. Cir. 2000).  Whether the focus is on the objectively reasonable police officer in defendants' position or on the defendants themselves and an objectively reasonable standard, or the subjective reasonableness and good faith of these particular officers, the result must be the same on Count I and Count II on the evidence that was before the jury in this case.  The defendant's motion for judgment as a matter of law on Count I therefore is granted.

With respect to Count III (the malicious prosecution claim), the defendants' primary argument is that there could have been no malicious prosecution because there was in fact probable cause.  The jury, of course, found to the contrary, concluding that there was no probable cause; and this Court has just rejected the defendants' argument that it should substitute itself for the jury and find probable cause now.  Furthermore, even if the police had a reasonable good faith belief in making their decision to detain the plaintiff on the Taft Bridge, that does not justify their conduct during the ensuing 24 hours and beyond.  Based on the firm and unequivocal statements of Mrs. Feldman that Mr. Pitt was not the robber, the "50-50" opinion of Mr. Feldman, the omissions and misstatements in the Gerstein affidavit, the testimony of the

8

Assistant United States Attorney that he relied on the police for the facts and, at most, only edited the <u>Gerstein</u>, and the jury's assessment of the video tape,[1] it was not unreasonable for the jury to conclude that Mr. Pitt was not the person who committed the robbery, that that fact should have been apparent certainly within a few hours of his detention, if not immediately, and that the defendants acted with the requisite malice.  The jury's judgment on the malicious prosecution claim therefore will stand.  See <u>Joeckel v. Disabled American Veterans</u>, 793 A.2d 1279, 1282 (D.C. 2002).

With respect to Count IV (intentional infliction of emotional distress), the jury found against the District of Columbia but for the individual defendants.  While the Court rejects the argument that the evidence supports a finding that some unidentified member of the Metropolitan Police Department planted evidence, it agrees with the plaintiffs that a finding of liability on the part of the District of Columbia alone may mean that the jury was simply uncertain as to which specific police officers -- one or more of the three defendants or an officer or officers not sued (such as Lieutenant Joseph Eaves, for example), all of whom were agents of the District -- were responsible for some aspect of the mistreatment Mr. Pitt and his wife suffered.  Under Rule 50 and the case law in this jurisdiction, the Court finds no basis to grant defendants' motion on this claim.

Count VII (loss of consortium) is a derivative claim.  The jury verdict therefore will stand because the Court has decided that there is no basis to vacate the findings of liability on Counts III and IV.

---

[1] It should have been obvious to the police that Mr. Pitt was not the person on the video tape.

Even though the Court has granted the motion for judgment as a matter of law on Count I, the Court does not believe an award of $100,000 in compensatory damages to plaintiff Christopher G. Pitt, Sr., and $50,000 to plaintiff Tela Hansom-Pitt with respect to the remaining counts is excessive.

With respect to the $1,000 in punitive damages assessed against each of the individual defendants, the matter is more complicated. The jury found each of them liable for malicious prosecution, but not liable for the intentional infliction of emotional distress. With the finding of malice on Count III, however, and the necessary evidentiary bases for this jury finding, the Court cannot conclude under the standards of Rule 50 that the punitive damages award should be set aside. See Butera v. District of Columbia, 235 F.3d 637, 657 (D.C. Cir. 2001); cf. Kinberg v. District of Columbia, Civil Action No. 94-2516, 1998 U.S. Dist. LEXIS 339 (D.D.C. January 5, 1998), affirmed and reprinted as appendix to Rogala v. District of Columbia, 161 F.3d 44, 57-58 (D.C. Cir. 1998).

An Order consistent with this Opinion shall be issued this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: December 23, 2005